# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 10-103V
### Filed: January 15, 2016

| | |
|---|---|
| * * * * * * * * * * * * * * * | UNPUBLISHED |
| LISA ERICZON, parent and legal, * | |
| representative of the estate of J.E., * | |
| * | |
| Petitioner, * | Chief Special Master Dorsey |
| * | |
| v. * | |
| * | |
| SECRETARY OF HEALTH * | Attorneys' Fees & Costs; |
| AND HUMAN SERVICES, * | Unnecessary Billing by Multiple |
| * | Attorneys; Excessive Fees and Costs |
| Respondent. * | |
| * | |
| * * * * * * * * * * * * * * * | |

<u>Ronald Craig Homer</u>, Conway, Homer & Chin-Caplan, P.C., Boston, MA, for petitioner.
<u>Debra A. Filteau Begley</u>, United States Department of Justice, Washington, DC, for respondent.

### <u>DECISION ON ATTORNEYS' FEES AND COSTS</u>[1]

        The undersigned issued a Decision pursuant to the parties' stipulation awarding petitioner $200,000 in compensation on July 9, 2015.  On November 13, 2015, petitioner filed an application for attorneys' fees and costs, requesting $138,792.60 in attorneys' fees,[2] $35,431.26 in attorneys' costs, and $982.90 for petitioner's costs, for a total fees and costs award of $175,206.76.  Petitioner's ("Pet'r's") Application ("App") at 1.  Petitioner filed a supplemental application for attorneys' fees on December 15, 2015, requesting an additional $3,076.50 in fees, for a total of $141,869.10 in attorneys' fees and a total of $178,283.26 in fees and costs.  Pet'r's

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this ruling on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)).  As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party:  (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy."  Vaccine Rule 18(b).

[2] The calculations used in petitioner's application for attorneys' fees are based on the rates awarded in <u>McCulloch v. Sec'y of Health & Human Servs.</u>, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Supplemental ("Supp") App. at 1.  Respondent has raised objections to certain aspects of petitioner's fee applications. Respondent's ("Resp's") Opposition ("Opp.") at 1-2.

For the reasons set forth below, the undersigned awards petitioner $161,714.92 in reimbursement for fees and costs.

## I.    Procedural History

On February 18, 2010, Lisa Ericzon ("petitioner"), filed a petition on behalf of the estate of her child, J.E., pursuant to the National Vaccine Injury Compensation Program.[3]  42 U.S.C. §§ 300aa-1 to -34 (2012).  Petitioner alleged that J.E. developed cerebral vasculitis that was caused by her receipt of the Human Papillomavirus ("HPV") vaccines, administered to her on July 16, 2007, September 17, 2007, and February 20, 2008.  Petitioner further alleged that J.E.'s death was a sequelae of her alleged injury.  On July 9, 2015, the parties filed a stipulation stating that a decision should be entered awarding compensation.  The undersigned issued a Decision pursuant to the parties' stipulation on July 9, 2015, awarding petitioners $200,000 in compensation.

On November 13, 2015, petitioner filed an application for attorneys' fees and costs, requesting: $138,792.60 in fees, $35,431.26 in costs, and petitioner's costs in $982.90.  Respondent filed an opposition to petitioner's application on December 1, 2015, objecting on the grounds that the attorneys' hourly rates were not reasonable, that portions of the time expended were excessive, and that the number of attorneys working on the case was unreasonable.  Resp's Opp. at 1-2.  Respondent also objected to the amount of time billed by petitioner's expert, Dr. Svetlana Blitshteyn, arguing that she billed 18 hours for her first expert report that "she entirely abandoned prior to hearing."  Id. at 2.

Petitioner filed a reply to respondent's opposition on December 11, 2015, arguing that none of the fees or costs requested were unreasonable or excessive.  Pet'r's Reply at 1.  Petitioners also filed a supplemental application for attorneys' fees, requesting an additional $3,076.50 in reimbursement for fees incurred for reviewing respondent's opposition and drafting and filing the reply.  See Pet'r's Supp. App. at 1.  This matter is now ripe for adjudication.

## II.    Discussion

Under the Vaccine Act, the special master shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation.  42 U.S.C. § 300aa-15(3)(1).  Petitioner in this case was awarded compensation pursuant to a stipulation, and therefore she is entitled to an award of reasonable attorneys' fees and costs.

---

[3] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2012) ("Vaccine Act" or "the Act").  All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

### a.   Reasonable Attorneys' Fees

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1349 (Fed. Cir. 2008).  Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  Id. at 1347-58 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)).  Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings.  Id. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service.  See Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 316-18 (2008).  Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary."  Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).  It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done."  Id. at 1522.  Furthermore, the special master may reduce a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners notice and opportunity to respond.  See Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 209 (Fed. Cl. 2009).  A special master need not engaged in a line-by-line analysis of petitioner's fee application when reducing fees.  Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 729 (Fed. Cl. 2011).

### i.   Hourly Rates

In 2006, the parties' counsel in this case reached an agreement on the hourly rates for CHCC attorneys, paralegals, and law clerks based upon prevailing rates in the Boston area.  See Carr v. Sec'y of Health & Human Servs., No. 00-778V, 2006 WL 1073032, at *1-4 (Fed. Cl. Spec. Mstr. Mar. 29, 2006).  The Carr agreement was entered into two years before the seminal Avera case, which established that a court should use the forum rate, i.e., the District of Columbia rate, in determining an award of attorneys' fees.  Avera, 515 F.3d at 1348.  At the same time, the court also adopted the Davis County exception to the forum rate rule to prevent windfalls to attorneys who work in less expensive legal markets.  Id. at 1349 (citing Davis Cnty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. V. United States Envtl. Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)).  Recently, CHCC has been requesting rates higher than the rates to which the parties agreed in Carr.  See, e.g., McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

The issue of an appropriate hourly rate for the attorneys, paralegals, and law clerks at Conway, Homer & Chin-Caplan ("CHCC") was recently ruled upon in McCulloch.  The undersigned fully agrees with the McCulloch analysis regarding appropriate hourly rates for the attorneys, paralegals, and law clerks at CHCC and will use the same hourly rates used in that decision.  Those rates were utilized in both Petitioner's Application for Attorneys' Fees and

Costs and Petitioner's Supplemental Application for Attorneys' Fees.  Using the <u>McCulloch</u> rate, the total amount of attorneys' fees that CHCC has requested is $141,869.10.

## ii.  Unnecessary Time Billed by Multiple Attorneys

Respondent objects to multiple attorneys billing time on this case as well as the total number of hours billed.  Resp's Opp. at 2.  The invoice of CHCC billing entries in the initial fee application reflects fees charged for over 600 hours of work performed by eight attorneys along with several paralegals and law clerks.  <u>See</u> Pet'r's App., Tab A.  Respondent argues that the amount of time spent is "extraordinary" given the relative complexity of the case, and that so many attorneys working on this case led to "needless duplication" in the billing.  Resp's Opp. at 2.

Petitioner contends that the time additional attorneys spent on the case was reasonable, necessary, and was not duplicative.  Pet'r's Reply at 8.  Petitioner argues that respondent has not identified any instances of duplicative billing in this case.  <u>Id.</u>  Petitioner further argues that "it is beneficial for the firm's clients … for attorneys to discuss the facts, medical theory and legal ramifications of each case in detail."  <u>Id.</u>  Petitioner asserts that counsel for respondent "operate[s] in a similar manner."  <u>Id.</u>

The undersigned and other special masters have previously noted the inefficiency that results when multiple attorneys work on one case.  CHCC often employs such a business model, but special masters have also reduced fees for other attorneys and firms.  <u>See</u> <u>Sabella</u>, 86 Fed. Cl. at 214-15 (affirming the special master's reduction of fees for overstaffing where three attorneys from two different firms worked on a case together); <u>Austin v. Sec'y of Health & Human Servs.</u>, 2013 WL 659574, at *14 (Fed. Cl. Spec. Mstr. Jan 31, 2013) (Special Master Vowell deducted fees for excessive intra-office communication in a case where seven attorneys at CHCC billed for attending conferences and drafting memoranda about the case); <u>Soto v. Sec'y of Health & Human Servs.</u>, No. 09-897V, 2011 WL 2269423, at *6 (Fed. Cl. Spec. Mstr. June 7, 2011) (Special Master Millman reduced CHCC's fees for intra-office communications and meetings); <u>Carcamo v. Sec'y of Health & Human Servs.</u>, No. 97-483V, 2011 WL 2413345, at *7 (Fed. Cl. Spec. Mstr. May 20, 2011) (Special Master Millman reduced fees when two attorneys at the Law Offices of Dale K. Galipo billed for the same meetings with a client).

The undersigned finds some of petitioner's requested fees unreasonable, unnecessary, and duplicative.  The undersigned agrees with respondent that the number of attorneys who billed time in this case is excessive and unnecessary.  At least eight different attorneys worked on petitioner's file.  This amount of attorney involvement is not justifiable, especially given that some of the attorneys billed fairly minimal hours. For example, Mr. Pepper billed a total of one and two tenths of an hour in this case, including time for reviewing a settlement demand letter and reviewing status reports.  <u>See</u> Pet'r's App., Tab A, at 33, 48.  Similarly, Ms. Faga billed a total of three tenths of an hour for editing status reports and "elections."  <u>Id.</u> at 53-53.  Petitioner has not offered any meaningful explanation for why so many attorneys worked on routine filings in this case, and the undersigned agrees with respondent that such firm-wide involvement is unnecessary.

In addition to at least eight attorneys working on the file, the undersigned also finds it extraordinary that four partners worked on the file, including Mr. Conway, Mr. Homer, Ms. Chin-Caplan, and Ms. Ciampolillo, all of whom are experienced Vaccine Program attorneys. Petitioner has not given a sufficient explanation as to why the involvement of this many partners in a single case is necessary.

CHCC billed excessive time for intra-office communications, including meetings, telephone calls, and office memoranda.  For example, on February 19, 2010, Mr. Conway, Mr. Homer, and Ms. Chin-Caplan collectively billed nearly two hours of time to meet and discuss petitioner's case and the status of research for what appears to have been a thirty minute meeting. Pet'r's App., Tab A, at 7.  These intra-office meetings and conferences continued throughout the duration of petitioner's case, including on May 10, 2011, May 11, 2011, March 2, 2012, April 5, 2012, April 26, 2012, May 17, 2012, and January 7, 2014.  Id. at 13, 17-19, 34.  Three or more people were involved in each of these meetings, and petitioner has not offered any explanation as to why it was necessary to bill for so many attorneys in case meetings.  Similarly, several attorneys billed for writing and reviewing intra-office memoranda regarding petitioner's case, including but not limited to September 17, 2010, October 4, 2010, March 28, 2011, June 10, 2011, March 21, 2012, and October 4, 2012.  Id. at 10, 12, 13, 18, 23.  The undersigned finds these billing entries excessive.

In addition to the excessive intra-office communications, the undersigned also finds it unnecessary that multiple partners were often involved in drafting and editing the same documents.  For example, on March 19, 2012, Ms. Ciampolillo billed five hours for drafting and editing a discovery request for the Court to compel the FDA to produce documents related to Merck's post-marketing surveillance of the Gardasil vaccine.[4]  The same day, Mr. Conway billed nearly an hour and a half of time to edit this same motion for discovery.  See Pet'r's App., Tab A, at 17.  Similarly, on September 12, 2013, Ms. Ciampolillo billed three tenths of an hour for drafting a joint status report, and Mr. Conway billed one tenth of an hour for editing this joint status report.  See id. at 29.  Petitioner has not offered any reasonable explanation as to why it is necessary for multiple partners to draft and edit routine documents, such as status reports.

The undersigned finds that the reviewing of documents by multiple attorneys led to excessive billing in this case.  Specifically, Mr. Homer billed time to review electronic filing notifications and orders.[5]  In petitioner's application for fees, there are at least 105 entries, totaling ten and a half hours, in which Mr. Homer billed time to review orders and filings in petitioner's case.  These ten and a half hours do not account for Mr. Homer's other billable time spent working on the case.  While it is true that Mr. Homer is the attorney of record in petitioner's case, the primary attorneys working on the file must also review all Orders and pleadings so as to be informed of the status of the case and comply with deadlines.  For example,

_____

[4] Petitioner asked the Court to compel respondent to produce these documents due to the prohibitive cost of production, which would "constitute[] and [sic] undue hardship upon the petitioner."  Pet'r's Motion to Compel filed March 19, 2012, (ECF No. 32) at 10.  The cost of producing these documents was over $7,000.00.

[5] See Pet'r's App., Tab A, at 7-9, 11-19, 21-22, 24-30, 32-35, 39-53.

it would be difficult, if not impossible, for Ms. Ciampolillo, who drafted the majority of petitioner's status reports, to draft a status report in compliance with an Order without first reviewing that Order.  Much of Mr. Homer's time billing for reviewing case filings is thus unnecessary and duplicative.[6]

Petitioner also requests fees for research performed by law clerks.  See, e.g., Pet'r's App., Tab A, at 15, 16, 40, 41, 43, 46.  Law clerks billed over 42 hours for case research regarding the VAERS database, discovery requests, "Gardasil information," and general vaccine case law.  Id. This research appears to be duplicative, as Ms. Ciampolillo, Ms. Chin Caplan, and other firm staff also billed time for similar research related to petitioner's case.  For example, on December 15, 2011, Ms. Ciampolillo billed four hours of time for research on "Gardasil studies," and on December 19, 2011, she billed three hours for researching information regarding Merck and VAERS.  Id. at 15-16.  Additionally, on two occasions in March 2012, Ms. Chin Caplan collectively billed almost two hours of time for research on additional medical literature and VAERS information.  Id. at 17.[7]  The undersigned thus finds petitioner's request for over 50 hours of billable research excessive.

Finally, the undersigned finds that petitioner's fee request is excessive based on her knowledge of the firm's billing practices in numerous other cases.  The fees in this case appear markedly higher than in the firm's other similarly situated cases.  Given the number of cases petitioner's counsel has in the program and the relative complexity of this case when compared to other similarly situated cases, the undersigned finds that petitioner's fee request is excessive.

For all of these reasons, the undersigned will reduce petitioner's entire fee award by ten percent.  **The undersigned reduces petitioner's requested attorneys' fees by $14,186.91.**

### b.  Costs

Respondent objects to $7,600.00 (19 hours) billed for Dr. Svetlana Blitshteyn's first expert report, arguing that this report lacked a reliable basis and was eventually abandoned prior to the hearing.  Resp's Opp. at 2-3.  Respondent further argues that Dr. Blitshteyn is not a qualified expert in the field of toxicology but that her first report was based upon a toxicological cause of death.  Id.  The undersigned agrees with respondent and deducts five and a half total hours from Dr. Blitshteyn's bill to reflect the time spent on toxicology issues, which the undersigned finds are outside of her area of expertise.  Deductions are made as follows: $800.00 (2 hours) will be deducted from the March 22, 2011 time entry; $800.00 (2 hours) will be deducted from the March 24, 2011 time entry; and $600.00 (1.5 hours) will be deducted from the March 25, 2011 time entry, for a total deduction of $2,200.00.

---

[6] The undersigned also notes that the justification for Mr. Homer's hourly billing rate of $400 per hour is his many years of experience with the Vaccine Program that have shaped his insight and judgment regarding vaccine cases.  Mr. Homer is not using this insight and judgment when reviewing files and orders to track deadlines and assign tasks.

[7] See also id. at 12 (billing one hour for paralegal research regarding the citations and articles referenced in petitioner's expert report).

The undersigned also finds petitioner's counsel's monthly Verizon Wireless telephone charges from December 24, 2013, to January 23, 2014, amounting to $181.43, to be unreasonable.  See Pet'r's App., Tab A, at 91.  Petitioner has not provided a reason as to why charges for an attorney's phone bill are included in the application for costs, and thus the undersigned will not permit an award of these costs. **The undersigned therefore reduces petitioner's costs by $2,381.43.**

### III.    Conclusion

The undersigned finds an award of attorneys' fees and costs appropriate.  In sum, the undersigned awards petitioner the following amount for attorneys' fees and costs:

Petitioner's Application for Attorneys' Fees & Costs:

| | |
|---|---|
| Requested Attorneys' Fees: | $138,792.60 |
| Reductions: | $13,879.26 |
| Attorneys' Fees Awarded: | $124,913.34 |
| | |
| Requested Attorneys' Costs: | $35,431.26 |
| Reductions: | $2,381.43 |
| Costs Awarded: | $33,049.83 |

Petitioner's Supplemental Application for Attorneys' Fees:

| | |
|---|---|
| Requested Attorneys' Fees: | $3,076.50 |
| Reductions: | $307.65 |
| Attorneys' Fees Awarded: | $2,768.85 |

Petitioner's Costs:                              $982.90

Total Fees & Costs Awarded:                $161,714.92

**Accordingly, the Court awards:**

a.  **$160,732.02**, representing attorneys' fees and costs.  The award shall be in the form of a check made payable jointly to petitioner and Conway, Homer & Chin-Caplan, P.C., in the amount of **$160,732.02**.

b.  **$982.90**, representing petitioner's costs.  The award shall be in the form of a check made payable to petitioner for **$982.90**.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[8]

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.

**IT IS SO ORDERED.**

<u>s/ Nora Beth Dorsey</u>
Nora Beth Dorsey
Chief Special Master